UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

STAR SERVICE CORP.,             )
                                )
            Plaintiff,          )
                                )
v.                              )          CIVIL ACTION
                                )          NO. 14-13665-JGD
ABM JANITORIAL SERVICES-        )
NORTHEAST, INC.,                )
                                )
            Defendant.          )

## MEMORANDUM OF DECISION AND ORDER
## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

March 27, 2017

DEIN, U.S.M.J.

## I. <u>INTRODUCTION</u>

In December 2010, the defendant, ABM Janitorial Services – Northeast, Inc. ("ABM"), entered into an agreement with the Massachusetts Convention Center Authority ("MCCA") to provide janitorial and cleaning services for the Boston Convention & Exhibition Center and the Hynes Convention Center.  ABM, in turn, entered into a Subcontract Agreement (the "Agreement") with the plaintiff, Star Service Corporation ("Star"), to provide the janitorial services at these sites.  As part of the parties' arrangement, Star also agreed to be bound by ABM's contract with SEIU, Local 615, the Union that represented employees performing janitorial and cleaning services at MCCA sites.

While Star was performing the services called for under the Agreement, the Massachusetts Department of Labor determined that Star was paying its employees at the Convention Centers less than the prevailing wage for state cleaning contracts.  While Star

did not dispute that it was not paying the prevailing wage, it argued that it was paying its employees in accordance with the contract with the Union.  A dispute arose between Star and ABM as to whether Star's failure to pay the prevailing rate constituted a breach of the Agreement.  In addition, ABM claimed that Star had wrongfully failed to carry workers' compensation insurance, as a result of which it had to pay an injured employee's claim, and that an audit conducted by ABM revealed that Star had billed for work that had not been performed.  ABM then terminated the Agreement "for cause," and withheld in excess of $318,000.00 due to Star under the Agreement.  Star brought suit against ABM for the amounts withheld and other damages, and ABM responded by asserting various counterclaims against Star.

This matter is before the court on "Defendant ABM Janitorial Service-Northeast, Inc.'s Motion for Summary Judgment."  (Docket No. 38).  By this motion, ABM is seeking judgment in its favor on all of Star's claims, as well as on its own counterclaims.  Star has opposed the motion on the grounds that material facts are in dispute.

For all the reasons detailed herein, ABM's Motion for Summary Judgment (Docket No. 38) is ALLOWED IN PART and DENIED IN PART as follows:

<u>As to the Complaint</u>:

<u>Count I - Breach of Contract</u>: Allowed as to the claims based on Star's failure to maintain workers' compensation insurance, and ABM's claim that Star overbilled ABM; denied as to the claim that Star breached the Agreement by failing to comply with the prevailing wage law.

<u>Counts II–V</u>:  Allowed.

As to ABM's Counterclaim:

Count I - Breach of Contract; Count IV - Indemnity:  Allowed as to the claims based on Star's failure to maintain workers' compensation insurance, and ABM's claim that Star overbilled ABM; denied as to the claim that Star breached the Agreement by failing to comply with the prevailing wage law.

Counts II, III & V:  Denied.

## II.  STATEMENT OF FACTS[1]

ABM is a California corporation with a principal place of business in Texas.  DF ¶ 2. It provides a variety of services, including janitorial and cleaning services, at various facilities.  Id. ¶ 3.  In December 2010, ABM entered into an agreement with MCCA to provide janitorial and cleaning services for the Boston and Hynes Convention Centers.  Id. ¶ 4.  That agreement provides for the payment of specified hourly rates for certain employees, including operations supervisors, utility workers and cleaners.  ABM Ex. A ¶ 3.2.  ABM was obligated to pay "not less than the wage rates" specified in the agreement, but could pay higher wages if it saw fit to do so.  Id. ¶ 3.5.

ABM, in turn, entered into the Subcontract Agreement with Star in December 2010. DF ¶ 5.  Star is a Massachusetts corporation, with a principal place of business in East Boston, Massachusetts, and had been working at the Boston and Hynes Convention Centers before ABM was retained.  Id. ¶¶ 1, 5.  The parties agree that ABM retained Star's services

---

[1] Unless otherwise indicated, the facts are derived from ABM's "Statement of Undisputed Material Facts" (Docket No. 39) ("DF"); the Declaration of Thomas Gallo, ABM's Treasurer (Docket No. 42) ("Gallo Decl.") and attached exhibits ("ABM Ex. ___"); the Affidavit of Allison B. Cherundolo, ABM's counsel (Docket No. 40) ("Cherundolo Aff.") and attached pleadings; the records submitted by ABM in connection with its Reply Memorandum (Docket No. 56); and "Plaintiff's Response to Defendant's Statement of Undisputed Material Facts" (Docket No. 53) ("PR").

in order to satisfy the MCCA's minority-owned business contracting requirements.  Id. ¶ 5.

Pursuant to the Agreement, Star consented to be bound by the terms of the Agreement as

well as the specifics of the contract between ABM and MCCA.  Id. ¶ 15; ABM Ex. B (Agree-

ment ) ¶ 1(a).  In addition, Star agreed to be bound by ABM's contract with the Union (the

"Union Contract"), "which provided additional terms governing Star's relationship with its

workers" at the Convention Centers.  DF ¶ 16.  Star provided services beginning at the

Hynes on January 1, 2011, and at the Boston Convention Center on January 8, 2011, and

ending at both places on November 29, 2013.  Id. ¶ 26.  ABM terminated Star's services "for

cause" by letter dated December 2, 2013.  DF ¶ 74; ABM Ex. W.  ABM withheld $318,791.91

from amounts allegedly due to Star under the Agreement.  DF ¶ 71.

### The Obligation To Pay Wages

Article VI of the Union Contract, entitled "Wages," provides that "Wages, during the

term of this Agreement, shall be paid as set forth in 'Appendix A', attached hereto and made

part of this Agreement."  ABM Ex. C (Union Contract) Article VI.  Appendix A lists what

appears to be an hourly rate for employees in "Category A," "Category B & C," and "Category

D."  Id. Appendix A.  These categories are defined in the Union Contract as follows:

> Category A – Regularly scheduled employees of over 29 hours
> Category B – Regularly scheduled employees of between 16 and 29 hours,
>     inclusive
> Category C – Regularly scheduled employees of under 16 hours
> Category D – Daily cash employees

Id. Article IV.

In addition, for employees who fell within Categories A-C under the Union Contract,

Star was obligated to make certain payments to the Boston Building Service Employees

Trust Fund and the Massachusetts Service Employees Pension Fund (the "Funds"), and was

then able to take a credit for such payments.  See id. Articles XIV & XV; DF ¶ 21; PR ¶ 21. These payments are included in the determination whether the prevailing wage is being paid.  DF ¶¶ 49-50.

Star contends that in order to fulfill its contractual obligations with ABM, it was obligated to pay workers at the Convention Centers "in accordance with the wage schedules set forth in Article [VI] (Wages) of the Agreement between ABM and SEIU," including Appendix A thereto.  PR ¶ 17.  Star also argues that it complied with its obligations under the Union Contract.[2]  Therefore, according to Star, it does not matter if it paid the prevailing wage rate since it satisfied its contractual obligations with ABM by satisfying its obligations under the Union Contract.  ABM, on the other hand, argues that for purposes of this motion for summary judgment, it does not matter whether Star met its obligations under the Union Contract because it had an independent obligation under its Agreement with ABM to pay its workers "the state prevailing wage rate, which is required under M.G.L. c. 149, § 27F, the Massachusetts Prevailing Wage Law for state cleaning contracts (the 'PWL')."  DF ¶ 17.  In support of its position, ABM relies on paragraph 4 of the Agreement.  That paragraph provides as follows:

> 4.  **<u>COMPLIANCE WITH APPLICABLE LAWS</u>.**  Contractor [ABM] is an equal employment opportunity and affirmative action employer. Contractor does not discriminate in employment of persons or awarding of subcontracts based on an individual's race, sex, age, religion, national origin, sexual orientation, gender identity, veteran or disabled status. Subcontractor [Star] affirms that it is an equal employment opportunity employer and affirms that it does not discriminate against any person based on age, race, sex, color, religion, national origin, sexual orientation, gender identity, veteran or disabled status.  **Subcontractor hereby**

---

[2] Despite Star's contention that it complied with its obligations under the Union Contract, as detailed below there is evidence that Star failed to comply with its obligation to make payments to the Funds and/or took improper deductions from employees' paychecks.

> **acknowledges and affirms its obligation to comply with all federal, state and local laws, regulations and ordinances governing labor and employment of its employees and all other matters related to the performance of the Services under this Agreement including but not limited to** Executive Order 11246, Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act of 1967, as amended, the Rehabilitation Act of 1973, 41 CFR 60-741, the Americans with Disabilities Act, the Vietnam Era Veterans Readjustment Assistance Act of 1974, 41 CFR 60-25, and Executive Order 11625 (Minority Business Enterprise) together with all amendments thereto, the Immigration Reform and Control Act of 1986 (IRCA), the Williams-Steiger Occupational Safety and Health Act of 1970, the federal Fair Labor Standards Act, **state and local wage and hour laws**, and all laws, rules and regulations regarding the filing of reports and payment of social security, withholding and income taxes.  Subcontractor shall, upon request, provide express certification and evidence of compliance with such laws and that all required filings and governmental payments have been made.

ABM Ex. B ¶ 4 (emphasis added).  Star admits that it paid its employees less than the prevailing wage under the prevailing wage law.  PR ¶ 40.

The Commonwealth of Massachusetts, Department of Labor and Workforce Development, Department of Labor Standards ("DLS") is responsible for making deter-minations about whether contracts for cleaning of state buildings are covered by the prevailing wage law.  DF ¶ 18.  If so, DLS issues prevailing wage rates for cleaners, janitors, and porters.  Id.  It appears that in September 2010, DLS issued prevailing wage rates for cleaners, janitors and porters at the Boston and Hynes Convention Centers.  See ABM Ex. C-1.  Star denies that it knew about "the rates and method by which PWL applied to the work covered by the agreement between SEIU and ABM for work performed at the" Convention Centers.  PR ¶ 20.  ABM has offered no support for its assertion that Star knew about these rates.  See Gallo Decl. ¶¶ 8, 11; DF ¶ 20.

## The Attorney General's Investigation

In contradiction to Star's contention that it complied with its obligations under the Union Contract, by no later than March 2013, the Funds were asserting that Star was not meeting its obligations under the Union Contract to pay benefit contributions.  DF ¶ 45. The Massachusetts Attorney General notified ABM that it had investigated a complaint concerning work at the Convention Centers, and was considering an enforcement action against Star, under which it would seek to hold ABM jointly liable for Star's failure to pay the minimum prevailing wage under the prevailing wage law.  Id. ¶ 46.  The Attorney General also informed ABM that the Massachusetts Division of Unemployment Assistance had placed a lien on Star's payroll in the amount of $400,000.00.  Id. ¶ 47.[3]

On May 9, 2014, the Attorney General informed ABM that it had determined that from March 2012 through September 2013, Star had reported in excess of $959,000 in deductions from 160 workers for health, welfare and pension fund contributions that were never made.  Id. ¶ 49.  Since these contributions are relevant to whether the prevailing wage was paid, the Attorney General also informed ABM that as a result of Star's actions, Star had failed to pay its employees the required minimum prevailing wage.  Id. ¶ 50.  In addition, ABM was informed that the Attorney General's Office intended to take enforce-ment action pursuant to Mass. Gen. Laws ch. 149, § 27C, under which it would seek to hold

---

[3]  Star takes the position that since it was not a party to the conversations with the Attorney General's Office it cannot either admit or deny the allegations made by ABM relating to such communications.  See PR ¶¶ 46-51.  Since Star does not question the veracity of the allegations, and does not deny that there was an investigation by the Attorney General's Office, or the truth of the statements allegedly made about Star itself, the court will accept ABM's allegations about the Attorney General's investigation and communications as true.

both Star and ABM jointly liable for approximately $959,000 due to Star's employees.  <u>Id.</u>

¶ 51.

On September 5, 2014, ABM entered into a settlement with the Attorney General.  <u>Id.</u>

¶ 52.  As detailed therein,

> E.   In or around August of 2011, the Attorney General received complaints from the SEIU Local 615 (the "Union"), the exclusive bargaining agent for employees performing janitorial and related services at the MCCA sites, that Star had failed to pay its employees the minimum state prevailing wage, by improperly taking credit for deductions from the employees' pay for contributions to the employees' pension fund and for health and welfare plans.

> F.   The Attorney General, in response to this complaint, undertook an investigation through which the Attorney General concluded that, at relevant times between January 2011 and December 2013 (the relevant time period), Star failed to pay some or all of its employees the required minimum prevailing wage rate for cleaning services at the MCCA pursuant to Mass. Gen. L. c. 149, §§ 27H and 150 and it submitted claims to ABM for payment for services provided at the [Boston Convention & Exhibition Center].  Star made no payments to the relevant pension fund, and insufficient payment to the health and welfare funds, and it did not provide the minimum prevailing wage payments directly to its employees.

ABM Ex. G.  As part of the settlement, ABM agreed to pay $300,000.00, to be distributed

only to Star employees and the Massachusetts Service Employees Pension Fund.  <u>Id.</u> at ¶ 1;

DF ¶ 52.  ABM made the payment in a timely manner on October 1, 2014.  DF ¶ 53.

The Attorney General then pursued an action against Star for failing to pay the

appropriate prevailing wage at the Convention Centers.  <u>Id.</u> ¶ 54; ABM Ex. I.  As a result of

the $300,000 settlement payment made by ABM, the Attorney General reduced the total

amount Star was ordered to pay as restitution from approximately $959,000.00 to

$659,899.64.  DF ¶ 55.  Star was also ordered to pay a penalty, for a total of $758,884.64.

<u>Id.</u> ¶ 54.  There is nothing in the record to indicate how the amounts due were calculated,

or whether Star had submitted invoices to, and been reimbursed by, ABM for these amounts during the normal course of their business relationship.  See ABM Ex. I.

Star appealed the Attorney General's citation to the Commonwealth of Massachusetts Division of Administrative Law Appeals ("DALA") on the grounds that it was "excused from paying the prevailing wage because [Star was] required to pay the wage set in the collective bargaining agreement, which was a lower rate than the prevailing wage."  DF ¶ 56; ABM Ex. J at 6.  The Administrative Magistrate affirmed the Attorney General's citation, and rejected Star's argument.  Id.[4]  Thus, DALA affirmed the Attorney General's finding that Star had failed to pay its 160 workers the prevailing wage after taking deductions for health, welfare and pension fund contributions that it never made.  DF ¶ 57. Star did not appeal the DALA decision to the Massachusetts Superior Court, and the time to do so has expired.  Id. ¶ 59.

ABM contends that Star must indemnify it for the $300,000.00 it paid to the Attorney General's Office, plus the attorneys' fees it incurred in resolving the Attorney General's dispute.  In so arguing, ABM relies on paragraph 18 of the Agreement, which provides in relevant part as follows:

> **18.  <u>INDEMNIFICATION.</u>**  To the fullest extent permitted by law, Subcontractor [Star] shall, at its sole cost and expense, indemnify, defend and hold harmless Contractor [ABM], ... from and against any and all claims, demands, losses, liability, lawsuits, liens and judgments, including all attorneys' fees, costs and expenses (collectively "Claims") which arise out of, are alleged to arise out of or result, in whole or in part, directly or indirectly, from or in connection with ... (iv) Subcontractor's relationship with its employees or agents (including but not limited to a failure to

---

[4] Star relied on Mass. Gen. Laws ch. 150E, § 7(d) to support its contention that the collective bargaining agreement took precedence over the prevailing wage laws.  The Administrative Magistrate rejected this argument because the statute only applied to public employers, and because the statute provided that the terms of a collective bargaining agreement would take precedence over specifically identified statutes, which did not include the prevailing wage statute.  ABM Ex. J at 6-8.

> comply with paragraph 4 hereof); (v) any act or omission by Subcon-
> tractor, its employees, agents or sub-subcontractors; (vi) any Claims for
> which any of the Indemnitees and Subcontractor may be jointly or
> severally liable ....

ABM Ex. B ¶ 18.  Star disputes that it is obligated to indemnify ABM for wages that ABM

independently owed to the employees, especially since Star had allegedly complied with

the terms of the Union Contract.  As detailed below, this court finds that there are disputed

facts which preclude the entry of summary judgment on this issue.

### Workers' Compensation Claim

Under the Agreement with ABM, Star was required to carry workers' compensation

insurance for its employees at the Convention Centers.  DF ¶ 60; ABM Ex. B ¶ 20.  On June 8,

2012, a Star employee was injured during the course of providing services at the Boston

Convention Center.  DF ¶ 61.[5]  ABM has submitted evidence that Star's workers'

compensation policy had been cancelled, effective September 26, 2011.  Id. ¶ 63; ABM Ex. K.

Star admits that it cannot challenge this proof, and does not have evidence that it had

workers' compensation insurance as required by the Agreement.[6]  PR ¶ 62.  ABM settled

the employee's claim by paying the employee's medical bills, as well as a lump sum

settlement to the employee in the amount of $11,500.00.  DF ¶ 66.  ABM contends that its

---

[5] Rather inexplicably, Star has taken the position that it is without sufficient information to admit or deny the allegations concerning the alleged injury and subsequent workers' compensation claim, or ABM's contention that it paid the injured employee's claim.  See PR ¶¶ 61, 65-67.  Since Star has not suggested any reason why this court should not accept ABM's representations as true, the court will do so.

[6] ABM objects to the fact that Star continued to represent that it had workers' compensation coverage in place at the time of the injury even after ABM had provided Star with documentation establishing that the insurance had been cancelled.  See DF ¶¶ 68-69.  Star's inability to locate a policy calls into question the assertion in its complaint that "Star Service has provided ABM with proof of worker's compensation insurance – which ABM chose (and chooses) to ignore."  Compl. (Docket No. 1-2) ¶ 11.

total expenditure to resolve the workers' compensation claim was $37,515.61.  Id. ¶ 67.

ABM further contends that it is entitled to be indemnified for this amount.

### Alleged Overbilling For Services

After learning in 2013 that the Funds were complaining that Star was not making

benefits contributions as required, ABM conducted an internal audit.  Id. ¶ 70; ABM Ex. B

¶ 12 ("Audit Rights").  The audit, undertaken by Thomas Gallo, who was then a Regional

Vice President for ABM Janitorial Service-Northeast, Inc., and is now the Treasurer of ABM

Industries Incorporated, consisted of a comparison between the payroll records submitted

by Star to ABM detailing the number of hours worked by each employee, and the number of

hours listed on the invoices Star sent to ABM during the same time period.  Gallo Decl. ¶¶ 1,

40. [7]  ABM determined that in 2011, Star had invoiced ABM for 4,311.25 hours in excess of

those actually worked by employees, as reflected in the payroll records.  DF ¶ 72a.  ABM

multiplied these hours by the lowest contractual rate, and determined that Star had

overbilled ABM by $108,772.84 in 2011.  Id.  The same analysis resulted in a determination

by ABM that Star had overbilled ABM by $29,998.47 in 2012, and $23,356.67 in 2013, for a

total of $162,127.98.  Id. ¶ 72-73.

In support of its calculations, ABM submitted worksheets created by Gallo reflecting

the invoices issued by Star and the total number of hours for which Star had invoiced ABM

for each week (Gallo Decl. ¶ 41; ABM Exs. M-O); worksheets created by Gallo listing the

---

[7] Star admitted that its employees submitted timesheets to a supervisor each week, the timesheets were compiled into payroll records maintained by Star, and Star then paid its employees directly for the hours worked on a weekly basis.  PR ¶¶ 27-28.  Star then submitted invoices to ABM for payment on a weekly basis which listed the total number of hours worked by all Star employees in a specific job during the preceding week.  PR ¶¶ 30-32.  ABM then paid Star based on the invoices submitted.  PR ¶ 33.

number of hours worked by each Star employee in each week during 2011, 2012 and 2013 (Gallo Decl. ¶ 42; ABM Exs. P-R); worksheets created by Gallo comparing the number of hours Star employees worked (ABM Exs. P-R) to the number of hours for which Star invoiced ABM (ABM Exs. M-O) (Gallo Decl. ¶ 43; ABM Exs. S-U); and a worksheet created by Gallo detailing payments made to Star for amounts invoiced throughout the course of the Agreement.  Gallo Decl. ¶ 44; ABM Ex. V.  In addition, in his Declaration, Gallo explained how the payments reconciled with the invoices.  See Gallo Decl. ¶ 44.

In response to ABM's audit calculations, Star took the following position:

> The Defendant has failed to offer admissible record evidence that Star overbilled it for services rendered.  Indeed, ABM has offered no invoices establishing overbilling and/or any payments establishing that it actually paid the invoices wherein it alleges that overbilling occurred.  Rather, ABM relies on summaries of documents – which constitute multiple levels of hearsay – to support this contention.

PR ¶¶ 72-73.  However, Star did not submit any facts, affidavits, or other evidence challenging the accuracy of the calculations.[8]

In response to this objection, ABM submitted, in electronic form, 1,406 pages of documents, comprising the materials on which Gallo based his calculations.  Much of the documentation had been produced by Star during discovery, and it was supplemented, where needed, by ABM's own records.  See ABM Reply Mem. (Docket No. 56) at 3 & n.2. Star has not disputed the authenticity of these documents, or offered any evidence on its own behalf.

---

[8] During oral argument on the motion for summary judgment, counsel for Star indicated that his client challenges the claim of overbilling, but did not present any facts or proof that the calculations were inaccurate.

## Right to Offset

Finally, the parties disagree as to whether ABM appropriately offset amounts it claims were due it from amounts owed to Star under the Agreement.  ABM relies on paragraphs 2 and 19 of the Agreement, which provide in relevant part as follows:

> **2.  COMPENSATION.**  Subject to any modifications in the scope of work and compensation as agreed to in writing by the Parties, if Contractor has received Subcontractor's timely submitted and undisputed invoice, Contractor shall pay such invoice within 15 days of Contractor's receipt and approval of the invoiced amount and acceptance of the Services ....  **No acceptance of an invoice or payment tendered by Contractor shall be construed as an accord and satisfaction that the amount claimed or paid is accurate or constitutes a waiver of any claim Contractor may have with respect to the Services or to dispute such invoice or amount.**
>
> **All other** expenses incurred, credit extended or **payments made by Contractor on behalf of Subcontractor** including, but not limited to, advanced payments, equipment or supply costs, insurance premiums, surcharges, fines, penalties and repair or replacement costs **may be deducted from and set off by Contractor against any compensation earned by Subcontractor and due from Contractor under this Agreement....**
>
> **19.  SET OFF.  If any claims are made or anticipated to be made against Contractor or damages, expenses or costs are incurred by Contractor as a result of an incident or accident for which Subcontractor may be liable on account of the performance, failure to perform, negligence, criminal act, action or inaction of Subcontractor**, its employees, agents or sub-subcontractors, if any, Subcontractor shall be liable to Contractor for the amount thereof in addition to any actual or potential future litigation or remediation expenses and costs.  **In such instance, Contractor shall have the right, but not the obligation, in addition to any and all other rights and remedies to which it is entitled, to withhold as retainage from the amount otherwise due or to become due to Subcontractor hereunder**, equal to the amount of such actual or potential future claims, damages, costs and expenses....

ABM Ex. B ¶¶ 2, 19 (emphasis added).  Relying on these provisions, ABM withheld the amount of $318,791.91 from amounts due to Star when ABM terminated the Agreement. DF ¶ 83.

## Termination of Agreement

By letter dated December 2, 2013, ABM terminated the Agreement with Star, purportedly pursuant to paragraph 15 of the Agreement, which provides for the immediate termination of the contract if the termination is "for cause."  See ABM Ex. W.  As detailed in the termination letter, it was ABM's position that Star had engaged in "violations and breaches of the terms and conditions found in the Agreement including Star's disregard or violations of the law."  Id.  ABM cited to (i) the Attorney General's notice that Star had failed to pay legally required wages, allegedly in violation of paragraph 4 of the Agreement, (ii) the $400,000 lien that had been placed on Star's payroll by the Massachusetts Division of Unemployment Assistance, allegedly in further violation of paragraph 4, and (iii) Star's failure to maintain workers' compensation insurance in violation of paragraph 20 of the Agreement, which resulted in ABM having to cover an injury claim made by a Star employee.  Id.  In addition, ABM asserted that Star had overbilled it more than $100,000.00 during the period 2011 through 2012.  Id.  ABM immediately stopped payment to Star for any and all services, notifying Star in the termination letter that it would account for such funds and use them to offset the damages it had sustained.  Id.  ABM withheld $318,791.91. DF ¶ 83.

## The Litigation

Star brought suit against ABM challenging ABM's termination of the Agreement.  In particular, Star challenged the factual basis of the termination letter, alleging that the

Attorney General's Office had not brought an enforcement proceeding against Star,[9] that the lien against Star's payroll had been lifted, and that Star had carried workers' compensation insurance for the duration of the agreement.  Compl. ¶ 11.  Star, consequently, challenged ABM's decision to withhold the approximately $318,000.00 for services rendered by Star under the Agreement.  Id. ¶ 12.  Star sued for breach of contract (Count I),[10] quantum meruit (Count II), violation of Mass. Gen. Laws ch. 93A, § 11 (Count III), breach of the implied covenant of good faith and fair dealing (Count IV), and unjust enrichment (Count V).

ABM answered the complaint denying liability and asserting various counterclaims. Specifically, ABM brought a claim for breach of contract, alleging that "Star breached the Agreement when it failed to maintain valid workers' compensation insurance, failed to comply with state and local wage and hour laws, and fraudulently overbilled ABM for work not performed."  Countercl. (Docket No. 7) Count I, ¶ 57.  Based on substantially the same conduct, ABM also asserted claims for fraud/intentional misrepresentation (Count II), negligent misrepresentation (Count III), indemnity (Count IV), and quantum meruit/unjust enrichment (Count V).  ABM contends that it suffered the following damages: $300,000 paid to the Attorney General, which should have been paid directly by Star to the employees, plus attorneys' fees in connection with its dealings with the Attorney General's Office DF ¶¶ 76-78); $37,515.61 in connection with the workers' compensation claim (id. ¶¶ 79-

---

[9]  At the time the complaint was filed, Star was correct that no enforcement proceeding against Star had been started.

[10]  In addition to challenging ABM's offset of amounts due under the Agreement, Star alleged that ABM breached the Agreement by failing to give proper notice of its intent to terminate the contract. Compl. ¶ 16.  That appears to be a challenge to ABM's exercise of the termination for cause provision, which allows for immediate termination.  ABM Ex. B at ¶ 15.

80); and $162,127.98 in overbillings.  Id. ¶ 81.  ABM is also seeking attorneys' fees in

connection with the instant litigation.  Id. ¶ 82.  As detailed above, ABM offset $318,791.91,

leaving damages of $180,851.68, plus attorneys' fees and costs.  Id. ¶ 83.

Additional facts will be provided below where appropriate.

### III.  ANALYSIS

### A.    Summary Judgment Standard of Review

"The role of summary judgment is 'to pierce the pleadings and to assess the proof in

order to see whether there is a genuine need for trial.'"  PC Interiors, Ltd. v. J. Tucci Constr.

Co., 794 F. Supp. 2d 274, 275 (D. Mass. 2011) (quoting Mesnick v. Gen. Elec. Co., 950 F.2d

816, 822 (1st Cir. 1991) (citation omitted)).  The burden is on the moving party to show,

based upon the discovery and disclosure materials on file, and any affidavits, "that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a), (c).  "[A]n issue is 'genuine' if it 'may reasonably be

resolved in favor of either party.'"  Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008)

(quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)).  "A fact is 'material'

only if it possesses the capacity to sway the outcome of the litigation under the applicable

law."  Id. (alteration in original) (citations omitted).

"Once the moving party has satisfied its burden, the burden shifts to the non-moving

party to set forth specific facts showing that there is a genuine, triable issue."  PC Interiors,

794 F. Supp. 2d at 275 (citation omitted).  The opposing party can avoid summary judgment

only by providing properly supported evidence of disputed material facts.  LeBlanc v. Great

Am. Ins. Co., 6 F.3d 836, 841-42 (1st Cir. 1993).  Accordingly, "the nonmoving party 'may not

rest upon mere allegation or denials of his pleading.'" Id. at 841 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986)).

**B.      Breach of Contract**

The Complaint and Counterclaim are dependent on the resolution of the fundamental issue whether Star breached the Agreement by (1) failing to pay the prevailing wage, (2) failing to carry workers' compensation insurance, and/or (3) overbilling ABM.  If there was a breach, the next issues which must be resolved are whether the breach provided grounds for ABM's immediate termination of the Agreement for cause, and whether ABM appropriately offset any breach of contract damages from amounts due to Star under the Agreement.

For the reasons detailed herein, there are material facts in dispute as to whether Star breached the Agreement by failing to pay the prevailing wage.  However, ABM is entitled to summary judgment on its claims of breach of contract due to failure to carry workers' compensation insurance and for overbilling.  Moreover, ABM had grounds to terminate the Agreement for cause and to offset the amounts it was owed.

**1.      Breach of Contract - Failure to Pay the Prevailing Wage**

ABM contends that Star breached paragraph 4 of the Agreement by failing to pay the prevailing wage as required by state and local laws.  Star contends that there are material facts in dispute concerning this breach of contract claim because it complied with the provisions of the Union Contract between ABM and the Union by making the payments specified in Article VI (Wages) and Appendix A thereof.  Star Mem. (Docket No. 52) at 3.  Star argues further that the Union Contract only required that pension and benefit contributions be made for employees falling within Categories A-C, not D, and that "ABM

has not demonstrated that any (or even some) of the workers providing cleaning and janitorial services at the [Convention Centers] fell within Categories A-C, as it must." Id. at 3-4. Finally, Star argues that the DALA ruling did not establish that it failed to comply with the Union Contract. Id. at 4-5. In short, as Star argues:

> Here, Star complied with the terms and conditions of the agreement between ABM and SEIU (to which it assented) with respect to paying cleaning and janitorial employees at the [Convention Centers] and, as such, fully complied with its obligations under the Agreement with ABM. Stated simply, ABM failed to include terms in its agreement with SEIU that complied with state and local wage laws and Star should not bear the brunt (although it has) of this failure.

Id. This court agrees that there are material facts in dispute which preclude the granting of summary judgment on ABM's claim that Star breached the Agreement by failing to pay the prevailing wage.

As an initial matter, it is disputed whether the Agreement can be fairly interpreted to impose wage requirements beyond those detailed in the Union Contract. Admittedly, paragraph 4 of the Agreement requires Star to comply with all state and local laws. That is a very broad proposition. Moreover, while it refers to "state and local wage and hour laws" in a comprehensive list of all laws which may affect employees, it does not reference specific rates. Rather, the parties' Agreement requires Star to comply with the Union Contract, which contains specific details concerning the amount of wages that are to be paid. The court must consider "every phrase and clause" in a contract, and the clauses "must be considered as a workable and harmonious means for carrying out and effectuating the intent of the parties." In re 604 Columbus Ave. Realty Tr., 968 F.2d 1332, 1357 (1st Cir. 1992) (quotations omitted). Moreover, "[s]pecific terms are given greater weight than general language." Id. (and cases cited). In the instant case, a reading of the

Agreement as a whole can lead to the conclusion that the parties intended that Star comply with ABM's Union Contract in order to satisfy its obligation to pay appropriate wages. Changing the entire wage structure based on a general admonition to comply with the law is inappropriate given the detailed fee structure contained in the Union Contract.

That having been said, however, the issue of the appropriate contract interpretation does not have to be finally resolved at this time, since there are material facts in dispute concerning whether Star actually fulfilled its obligations under the Union Contract. As an initial matter, it is unclear whether compliance with the Union Contract would, in fact, result in wages below those required by the prevailing wage law as Star contends. It is difficult to imagine that the Union would agree to such a fee structure, and some clarification on this point is needed. Second, it is unclear whether Star actually complied with the terms of the Union Contract. Despite its assertion of compliance, there is evidence in the record that the Union and the Attorney General did not agree. Without some additional evidence as to the reason why Star was found not to have been paying the prevailing wage, this court is unable to determine whether Star actually fulfilled its wage obligations under the Union Contract.

Finally, even if this court were to determine that Star breached the contract by failing to pay the prevailing wage, summary judgment would be inappropriate on the issue of damages. The $300,000.00 ABM paid went to the employees and the Fund who were entitled to these payments under the Union Contract. In the usual course of business under the Agreement, Star would have submitted invoices to ABM that included the amount of wages paid, and ABM, in turn, would have reimbursed Star for those amounts. The record is silent as to whether Star had previously submitted invoices to ABM for this $300,000 (so

that ABM was, in effect, paying twice when it settled with the Attorney General), or if the

$300,000 constituted new wages for which ABM would ultimately be liable under the

parties' Agreement.  For these reasons, there are material facts in dispute, and ABM is not

entitled to summary judgment on the claims or counterclaims premised on Star's failure to

comply with the prevailing wage law.

### 2.   Breach of Contract – Workers' Compensation Insurance

It is undisputed at this point that Star breached the Agreement by failing to provide

workers' compensation insurance, as required by paragraph 20 of the Agreement.  More-

over, Star has not disputed ABM's contention that, as a result of Star not having insurance,

ABM paid an employee's medical bills as well as a lump sum settlement to the employee,

and incurred legal fees, for a total amount of expenditures of $37,515.61.  DF ¶¶ 66-67.

Similarly, Star does not contest that it is obligated to indemnify ABM for these amounts

under paragraph 18 of the Agreement, since the claim clearly arose out of Star's failure to

perform its contractual obligations.  Therefore, the next issue is whether the failure to

provide the insurance was grounds for termination of the Agreement for cause.  This court

finds that it was.

The Agreement provides:

> 15.  **TERMINATION FOR CAUSE.**  In the event Subcontractor defaults in
> the performance of any of the obligations and/or requirements con-
> tained herein, Contractor will have the right to immediately terminate
> this Agreement on actual notice to Subcontractor or its legal representa-
> tive.  Grounds for immediate termination for cause will include, but is
> not limited to Subcontractor's:
>
> ....
>
> 15.11  Default in the performance of any obligation or requirement
> under this Agreement, and if requested by Contractor, failure to cure
> such default within forty-eight (48) hours of Subcontractor's receipt of
> notice of such default from Contractor or Customer.

ABM Ex. B.  In the instant case, Star clearly defaulted in its performance of its obligation under the Agreement.  To the extent that ABM gave Star the opportunity to cure, Star clearly failed to do so since it continued to take the position that it had workers' compensation coverage even after ABM provided documentation that the insurance had been cancelled. See note 6, supra.  Thus, the undisputed facts establish that ABM properly terminated the Agreement for cause.

Finally, this court finds that ABM appropriately set off the amounts it incurred in connection with the workers' compensation claim.  This claim clearly falls within paragraph 19 of the Agreement since it consists of "damages, expenses or costs . . . incurred by Contractor as a result of an incident or accident for which Subcontractor may be liable[.]" ABM Ex. B ¶ 19.  Since Star does not challenge the damages ABM is claiming, this court finds that ABM properly offset the amount of $37,515.61 in connection with the workers' compensation claim.

### 3.   Breach of Contract - Overbilling

ABM has submitted evidence that, using a conservative analysis, Star overbilled it in the amount of $162,127.98.  Star has not submitted any factual challenge to ABM's evidence.  Rather, Star takes the position that ABM relied on inadmissible summaries to support its contention.  In addition, at oral argument Star's counsel stated that Star does not believe the calculations are correct.  However, Star has offered nothing in support of its objection, and ABM's counsel represented in court that Star has not given ABM notice of any objections or provided ABM with any information challenging ABM's calculations. Star's unsupported objections are insufficient to defeat ABM's motion for summary judgment.

As an initial matter, Star's objection that ABM provided summaries of its calculations is not well-founded.  Federal Rule of Evidence 1006 allows a party to "use a summary, chart, or calculation to prove the content of voluminous writings . . . that cannot be conveniently examined in court."  The underlying documents were available to Star, and had been produced (mostly by Star) in discovery.  In addition, ABM made the documents available to the court and Star again in connection with its Reply Memorandum.  It was entirely appropriate for ABM to provide the court with summaries of its calculations in connection with its motion for summary judgment.  See Neponset Landing Corp. v. Nw. Mut. Life Ins. Co., 902 F. Supp. 2d 166, 172-73 (D. Mass. 2012) (and cases cited).

In addition, the record supports the conclusion that the documents on which the calculations were based were either business records of Star (to the extent that they reflect the hours worked and hours billed) or of ABM (to the extent that they reflect the payments made).  See FDIC v. Key Fin. Servs., Inc., No. 89-2366-DPW, 1999 WL 34866812, at *9 (D. Mass. Dec. 23, 1999) (where summaries are being admitted into evidence, the underlying documents must be independently admissible into evidence) (and cases cited), aff'd on other grounds by Resolution Tr. Corp. v. Key Fin. Servs., Inc., 280 F.3d 12 (1st Cir. 2002). Here, the evidence is that Star created and submitted the time records in the usual course of business, and that it was Star's standard practice to compile and submit such records. See Fed. R. Evid. 803(6); see also note 7, supra.  In light of the fact that Star produced such records during the parties' business dealings, and then produced them during discovery, they are appropriately considered to have been authenticated.  See Orr v. Bank of Am. NT & SA, 285 F.3d 764, 777 n.20 (9th Cir. 2002) ("documents produced by a party in discovery [are] deemed authentic when offered by the party-opponent").  Similarly, Star does not

dispute that the invoices that it submitted were, in fact, paid, except for the $318,000 that

was withheld at the end.  See PR ¶ 33.  Moreover, as is apparent from his declaration, Gallo

reviewed the payment records of ABM in creating the summary chart which reflected

payments of the invoices.  See Gallo Decl. ¶ 44; ABM Ex. V.  Star's objection to the

calculations, without more, is insufficient to raise a question of fact.  See LeBlanc, 6 F.3d at

841-42 (mere denials are insufficient, party opposing summary judgment must provide

properly supported evidence of disputed material facts).

Star does not seriously challenge ABM's assertion that it was entitled to offset the

amounts it had overpaid to Star based on incorrect billing.  Nor does Star dispute that the

overbilling established by ABM would be grounds for termination for cause, since it would

be a default of Star's obligations under the Agreement.  Thus, ABM has established that it is

entitled to summary judgment on the breach of contract claims based on overbilling by

Star.

The court's resolution of the breach of contract issues will affect all the other claims

raised by the parties.  The court will separately address ABM's motion for summary

judgment as it relates to Star's Complaint and ABM's Counterclaim.

### C.    ABM's Motion for Summary Judgment on the Complaint

ABM has moved for summary judgment on all Counts of the Complaint against it.

Each count will be discussed briefly herein.[11]

---

[11]  With respect to its Complaint, Star has only addressed the breach of contract claim on the
grounds that the same allegedly disputed facts preclude summary judgment on all of its counts.  See
Star Mem. at 3 n.2.

## Count I – Breach of Contract

For the reasons detailed above, ABM is entitled to summary judgment on Star's claim that ABM breached the contract by terminating the Agreement "for cause."  In addition, ABM is entitled to summary judgment on Star's claim that ABM wrongfully withheld funds and terminated the Agreement due to Star's failure to have workers' compensation insurance and due to Star's overbilling.  However, there are disputed facts on the issue of whether ABM breached the Agreement by withholding funds and terminating the Agreement due to Star's failure to pay prevailing wages to its employees.

## Count II – Quantum Meruit
## Count V – Unjust Enrichment

Based on the same facts as its breach of contract claim, Star claims that under the equitable doctrines of quantum meruit and unjust enrichment it is entitled to payment for work performed for which it was not paid.  See Compl. ¶¶ 19-20, 31.  ABM is entitled to judgment on these claims as a matter of law.

As an initial matter, "[q]uantum meruit is a species of unjust enrichment."  Bisbano v. Strine Printing Co., 737 F.3d 104, 109 n.2 (1st Cir. 2013).  Star has made no attempt to distinguish between these closely related causes of action, and for present purposes "we need not draw fine distinctions among the various branches of the doctrine of unjust enrichment."  Id.

To sustain a claim for unjust enrichment, a plaintiff must show: "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under the circumstances would be inequitable without payment for its value."  Koufos v. U.S. Bank, N.A., 939 F. Supp. 2d 40, 52 (D. Mass. 2013) (quoting Mass. Eye & Ear Infirmary v.

QLT Phototherapeutics, Inc., 552 F.3d 47, 57 (1st Cir. 2009)).  Significantly, however, "[a]n equitable remedy for unjust enrichment is not available to a party with an adequate remedy at law." Santagate v. Tower, 64 Mass. App. Ct. 324, 329, 833 N.E.2d 171, 176 (2005) (citing Popponesset Beach Ass'n, Inc. v. Marchillo, 39 Mass. App. Ct. 586, 593, 658 N.E.2d 983, 988 (1996)).  In the instant case, the parties have an express contract that addresses the disputed issue, namely whether ABM properly withheld payment for work performed by Star.  "Recovery in quantum meruit presupposes that no valid contract covers the subject matter of a dispute.  Where such a contract exists, the law need not create a quantum meruit right to receive compensation for services rendered." Boswell v. Zephyr Lines, Inc., 414 Mass. 241, 250, 606 N.E.2d 1336, 1342 (1993). See also MCI WorldCom Commc'ns, Inc. v. Dep't of Telecommc'ns & Energy, 442 Mass. 103, 116, 810 N.E.2d 802, 812 (2004) (where provisions of an express contact address the disputed issue, party cannot pursue a claim of quantum meruit).  Consequently, Star's claims of unjust enrichment and quantum meruit will be dismissed.

### Count III - Mass. Gen. Laws ch. 93A

In Count III of its Complaint, Star alleges that the same conduct that constitutes a breach of contract also constitutes an unfair and deceptive practice in violation of Mass. Gen. Laws ch. 93A.  ABM is entitled to summary judgment on this claim as well.

It is well established that a breach of contract, standing alone, is insufficient to constitute a 93A violation. See Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 100-101, 390 N.E.2d 243, 251 (1979).  In the instant case, at most, ABM breached the contract by withholding funds in response to a finding by the Attorney General (and upheld by DALA) that Star had not paid its employees in accordance with the law.  ABM advanced these

amounts to the employees or the Funds, and Star received credit for ABM's payment in connection with Star's own dispute with the Attorney General.  Even if it turns out to have been a breach of contract, ABM's conduct does not rise "to the level of 'commercial extortion' or a similar degree of culpable conduct" so as to bring it into the realm of an unfair and deceptive act or practice.  Commercial Union Ins. Co. v. Seven Provinces Ins. Co., Ltd., 217 F.3d 33, 40 (1st Cir. 2000); see also Zabin v. Picciotto, 73 Mass. App. Ct. 141, 169-70, 896 N.E.2d 937, 963 (2008) ("a party's refusal to make payments due under a contract does not constitute an unfair trade practice where the party, in good faith, disputes its obligation to make the payments.") (and cases cited).

### Count IV – Beach of Implied Covenant of Good Faith and Fair Dealing

In Count IV of its Complaint, Star relies on the same conduct to assert a breach of the implied covenant of good faith and fair dealing.  To state a claim for breach of the covenant of good faith and fair dealing implied in every contract, the plaintiff must establish that there was conduct that goes beyond a mere breach of contract — rather, there must be "conduct taken in bad faith either to deprive a party of the fruits of labor already substantially earned or unfair leveraging of the contract terms to secure undue economic advantage." Christensen v. Kingston Sch. Comm., 360 F. Supp. 2d 212, 226, 229 (D. Mass. 2005).  Thus, there must be conduct "implicating a dishonest purpose, consciousness of wrong, or ill will in the nature of fraud." Equip. & Sys. For Indus., Inc. v. Northmeadows Constr. Co., 59 Mass. App. Ct. 931, 932, 798 N.E.2d 571, 575 (2003).  Here, ABM appropriately withheld funds due to overbilling and Star's failure to carry workers' compensation insurance.  To the extent that ABM withheld funds for the $300,000 payment to employees, Star received credit for that amount in connection with its own dispute with the Attorney

General's Office.  Star has not put forth any evidence to take this dispute beyond a breach of contract claim.  ABM is entitled to summary judgment on this count as well.

### D.    ABM's Motion for Summary Judgment on its Counterclaim

ABM has also moved for summary judgment on all Counts of its Counterclaim against Star.  For the reasons detailed herein, ABM is entitled to summary judgment on its counterclaims for breach of contract and indemnification based on Star's failure to have workers' compensation insurance and Star's overbilling.  However, the motion for summary judgment is otherwise denied.

### Count I - Breach of Contract
### Count IV - Indemnity

For the reasons detailed above, ABM is entitled to summary judgment on its counterclaim that Star breached the Agreement by failing to have workers' compensation insurance and by overbilling.  Similarly, ABM is entitled to summary judgment on its contention that it is entitled to be indemnified by Star for these items.  However, there are disputed facts that preclude summary judgment on ABM's claim that Star breached the Agreement by failing to pay employees the prevailing rate, and that ABM is entitled to be indemnified for the $300,000 it paid towards the employees' wages.

### Count II - Fraud/Intentional Misrepresentation
### Count III - Negligent Misrepresentation

ABM contends that Star engaged in fraud in connection with the Agreement.  Specifically, ABM asserts that: "by entering into the Agreement, Star falsely represented to ABM that it was and would continue to be in compliance with all state and local laws, including wage laws, and that it would maintain unemployment and workers' compensa-tion insurance."  Countercl. ¶¶ 60, 65.  In addition, ABM alleges that Star is liable for

intentional or negligent misrepresentation in connection with its submission of invoices to ABM "that exceeded the actual amount due and payable to Star." Id. ¶¶ 61, 67.  No additional facts beyond the allegations of the Counterclaim are provided in connection with the summary judgment motion.

"To prevail on a claim of fraudulent misrepresentation under Massachusetts law, the plaintiff must show that the defendant 'made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff reasonably relied upon the representation as true and acted upon it to his damage.'" Eureka Broadband Corp. v. Wentworth Leasing Corp., 400 F.3d 62, 68-69 (1st Cir. 2005) (quotation omitted).  To prevail on a claim of negligent misrepresentation, ABM must establish that Star "(1) in the course of [its] business (2) supplied false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance on the information, and (6) with failure to exercise reasonable care or competence in obtaining or communicating the information." First Marblehead Corp. v. House, 473 F.3d 1, 9 (1st Cir. 2006) (internal punctuation and quotation omitted).  ABM has not established that it is entitled to summary judgment on either of these claims.

As an initial matter, ABM has not established that Star made any representations on which it relied.  Rather, ABM has taken contractual obligations (not representations made in a contract), and characterized them as representations.  In addition, even assuming that these contractual obligations are actionable representations, ABM has submitted no evidence from which a factfinder can find that the "representations" were false when they were made or Star knew, or should have known, that they were false when made.  "To

recover for fraud under Massachusetts law, a plaintiff must prove that the defendant made a false representation of material fact with knowledge of its falsity[.]"  <u>Town & Country Fine Jewelry Group, Inc. v. Hirsch</u>, 875 F. Supp. 872, 875 (D. Mass. 1994) (quotation omitted).  Where, as here, the gist of ABM's claim is that Star did not live up to its promises, ABM must establish that Star "had no intention of fulfilling the promise when it was made, so there was a false representation of present intention."   <u>Thornton v. Harvard Univ.</u>, 2 F. Supp. 2d 89, 95 (D. Mass. 1998).  In fact, there is no evidence of Star's intent at any stage of the parties' relationship.  Finally, there is no evidence of ABM's reliance on any specific representation, assuming representations were made.  In short, these fraud claims will have to await further development of the facts.

### Count V - Quantum Meruit/Unjust Enrichment

In Count V of its Counterclaim, ABM alleges that Star has been unjustly enriched at the expense of ABM in connection with ABM's payments in connection with the workers' compensation claim, its payment of inflated bills, and the $300,000 settlement of the wage claim.  ABM is not entitled to summary judgment on this Count.  As an initial matter, there are disputed facts as to whether Star was "unjustly enriched," since ABM withheld amounts that Star was owed under the Agreement which exceeded the amount of its workers' compensation and overbilling claims.  As noted above, the issue whether Star breached the Agreement in connection with the wage and hour claim remains undecided.  Moreover, for the reasons detailed above, ABM has a contractual claim against Star for these same issues.  There is no reason to proceed under an equitable theory of relief.

Therefore, ABM's motion for summary judgment on its quantum meruit/unjust enrichment claim is denied.

## IV.  CONCLUSION

For all the reasons detailed herein, ABM's Motion for Summary Judgment (Docket No. 38) is ALLOWED IN PART and DENIED IN PART as follows:

As to the Complaint:

Count I - Breach of Contract: Allowed as to the claims based on Star's failure to maintain workers' compensation insurance, and ABM's claim that Star overbilled ABM; denied as to the claim that Star breached the Agreement by failing to comply with the prevailing wage law.

Counts II–V:  Allowed.

As to ABM's Counterclaim:

Count I - Breach of Contract; Count IV - Indemnity:  Allowed as to the claims based on Star's failure to maintain workers' compensation insurance, and ABM's claim that Star overbilled ABM; denied as to the claim that Star breached the Agreement by failing to comply with the prevailing wage law.

Counts II, III & V:  Denied.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge